UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MEDICAL PHARMACY, INC.**                                    CIVIL ACTION

**VERSUS**

**UNITED STATES DRUG**                                         NO.: 19-00868-BAJ-RLB
**ENFORCEMENT ADMINISTRATION,**
**ET AL.**

RULING AND ORDER

Before the Court is Plaintiff's **Motion to Dissolve Immediate Suspension Order Pursuant To 21 USC 824(d) and Request For Expedited Hearing, or Alternatively Motion for Temporary Restraining Order by Medical Pharmacy, Inc. (Doc. 2)**. Defendants filed an objection. (Doc. 5). For the reasons stated herein, Plaintiff's Motion is **DENIED**.

I.   BACKGROUND

This action seeks to dissolve an order issued by the U.S. Drug Enforcement Administration (DEA). Plaintiff is a pharmacy located in Zachary, Louisiana. It is licensed by the Louisiana Board of Pharmacy and has been in operation for more than fifty years. During this period, Plaintiff has operated under a DEA regulation which has permitted it to dispense controlled drugs.

Plaintiff alleges that on March 28, 2019, Defendants began requesting information regarding the prescriptions it filled for certain patients. Plaintiff alleges that five administrative subpoenas were issued to it from March 2019 to September 2019 for this information. Plaintiff further alleges that in addition to patient

1

prescription information, Defendants also requested all of Plaintiff's records for the list of patients in the subpoenas. Plaintiff contends that it complied with all of Defendants' requests.

On November 20, 2019, Defendants served Plaintiff with an Immediate Suspension Order ("ISO"). The ISO was based on Defendants' administrative findings that Plaintiff (1) routinely filled prescriptions for dangerous combinations of opioids, benzodiazepines, and muscle relaxants or stimulants,[1] (2) filled prescriptions for large quantities and high doses of these drugs; (3) filled "pattern" prescriptions for controlled substances[2]; (4) use of multiple payment methods by Plaintiff's customers; and (5) filled prescriptions for persons who traveled long distances to Plaintiff's store to fill these prescriptions. (Doc. 15 at p. 5- 6). As a result, Defendants determined that there was an imminent danger to the public health or safety. *See* Id. The ISO suspended Plaintiff's DEA registration and ability to distribute controlled substances.

On December 17, 2019, Plaintiff filed a Complaint (Doc. 1), alleging that Defendants issued the ISO with no notice and no opportunity to be heard, in violation of the right to due process under the Fourteenth Amendment. Plaintiff also sought a temporary restraining order. A hearing was conducted on January 6, 2020. The Court issued an Order denying Plaintiff's request for injunctive relief. (Doc. 14). Plaintiff

---

[1] The DEA has identified this combination of controlled substances as dangerous because the primary side effects include difficulty breathing and death. The DEA recommends that health care professionals limit the dosages and quantities of these drugs when prescribed together. (Doc. 24-12 at p. 137). These combinations of drugs are also addictive and commonly abused. (Id.).

[2] "Pattern" refers to prescriptions for the same drugs and the same quantities coming from the same doctor. (See Doc. 24-15 at p. 137).

filed the instant motion, seeking to dissolve the ISO. Plaintiff asserts that the decision to issue the ISO was arbitrary and capricious. Defendants filed an objection to the motion, arguing that the ISO is supported by evidence that Plaintiff's conduct presents an imminent danger to public health or safety that justified the issuance of the ISO without notice or opportunity to be heard.

The Court issued an Order for Defendants to produce the relevant portions of the administrative record relied on by Defendants in making its decision to suspend Plaintiff's registration. (Doc. 23). Defendants complied with the Order. Plaintiff filed a supplemental memorandum to address the administrative record (Doc. 38) and Defendants filed a response to the memorandum. (Doc. 40). Plaintiff later filed a reply memorandum in response. (Doc. 42).

## II.  LEGAL STANDARD

The denial, revocation, or suspension of a registration to manufacture, distribute, or dispense a controlled substance is governed by 21 U.S.C. § 824 et seq. Under subsection (d)(1), the Attorney General may suspend any registration simultaneously with the filing of proceedings under this section in cases where the agency finds that there is an imminent danger to the public health or safety. Imminent danger to the public health or safety means that due to the actions of the registrant, there is a substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur in the absence of an immediate suspension of the registration. 21 U.S.C. § 824(d)(2). In the absence of a finding of imminent danger to the public health or safety, there can be no suspension

3

without notice and an opportunity to be heard. See *Norman Bridge Drug Co. v. Banner*, 529 F. 2d 822, 828 (5th Cir. 1976). "A suspension under this subsection shall continue in effect until the conclusion of such proceedings, including judicial review thereof, unless sooner withdrawn by the Attorney General or dissolved by a court of competent jurisdiction."

Under the Administrative Procedure Act, a court may review the actions by an administrative agency such as Defendants. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Although it is not a final agency action, Defendants' decision to issue the ISO is made reviewable by a court of competent jurisdiction under 21 U.S.C. § 824(d)(1). If necessary, the reviewing court shall set aside agency action, including findings and conclusions found to be arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). In making the determination of whether agency action is arbitrary and capricious, a court shall review the whole record, or those parts of it cited by a party. 5 U.S.C. § 706(2)(F).

"Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017). A court must "disregard any *post hoc* rationalizations of the agency's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision." *Id.* (citing *Luminant Generation Co., L.L.C. v. E.P.A*, 675 F.3d 917, 925 (5th Cir. 2012). This review "is narrow and a court is not to substitute its judgment for that of the agency."

4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The administrative record, however, need only 'indicate the determinative reason for the final action taken.'" *Pension Ben. Guar. Corp. v. Wilson N. Jones Memorial Hosp.*, 374 F.3d 362, 367 (5th Cir. 2004) (citing *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). The Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). The party challenging the agency's action bears the burden of establishing that the agency's determination was arbitrary and capricious. *La. Pub. Serv. Comm'n v. FERC,* 761 F. 3d 540, 558 (5th Cir. 2014).

## III. DISCUSSION

### A. Plaintiff's Arguments in Response to the Administrative Record

Plaintiff filed a supplemental memorandum to address information in the administrative record. In addition to arguing that the record does not support a finding of imminent danger to the public health or safety, Plaintiff argues that (1) Defendants incorrectly concluded that Plaintiff's filling of allegedly suspicious prescriptions was improper and Defendants did not check Plaintiff's records to determine if Plaintiff addressed the suspicions before filling the prescriptions; (2) Defendants relied entirely upon its expert's opinions to issue the ISO; and (3) Defendants cannot reasonably rely on the opinions of its unqualified expert, (Doc. 38 at pp. 5—23). Plaintiff further argues in its second supplemental memorandum that the red flags identified by Defendants in the records, such as

5

filling prescriptions for out-of-state customers and filling combination prescriptions, should not be considered red flags. (Doc. 42).

The Court declines to engage in an analysis of all of the arguments offered because doing so would fall outside of the scope of judicial review under the arbitrary and capricious standard. The Court reiterates that this type of review is narrow, and that the Court must ensure that it does not substitute its judgment for that of Defendants. See *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A full consideration of these arguments may result in the substitution of the Court's judgment for that of the Defendants. For example, if the Court were to consider whether certain actions of the Plaintiff were correctly identified as red flags, the Court would certainly be substituting the judgment of Defendants with its own. Under arbitrary and capricious review, the Court is limited to considering whether Defendants articulated a "rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017). The Court is limited to evaluating the decision solely on the basis of the agency's stated rationale at the time of its decision. See *Id.*

**B.     Whether a Factual Basis Existed for the Issuance of the ISO.**

Plaintiff argues that the letter issuing the ISO did not contain any facts on which imminent danger to the public health and safety is founded. (Doc. 19 at pp. 23). Plaintiff further argues that there are no facts in the administrative record that support a finding of imminent danger resulting from Plaintiff's operations and facts that support the improper dispensing of controlled substances. (Doc. 35). Defendants

6

assert that the decision to immediately suspend Plaintiff's registration is based on facts gathered after an investigation, spanning several months, into Plaintiff's records. Defendants further assert that the evidence led to the "rational conclusion that Plaintiff was filling prescriptions issued outside the usual course of professional practice and without a legitimate medical purpose, thereby contributing to ongoing abuse of controlled substances." (Doc. 15 at pp. 6-7).

In compliance with the Court's Order, Defendants provided voluminous records detailing the Plaintiff's prescription history. (Doc. 24). Defendants also provided three reports by Defendants' expert, Dr. Diane Ginsburg, Ph.D., and data from a prescription monitoring program conducted from October 2016 to July 2019. (Id).[3] Dr. Ginsburg reviewed the prescription monitoring program data, which provides details regarding the drugs dispensed, customer names, customer addresses, the prescribing doctors, and payment methods. (Docs. 24-14 and 24-15). Dr. Ginsburg reviewed these records to determine whether there are any red flags to suggest that a pharmacy is operating as a pill mill.[4]

---

[3] Dr. Ginsburg is the former Interim Head of the Pharmacy Practice Division at the University of Texas at Austin College of Pharmacy. She is currently a clinical professor at the University of Texas, having served in this role since 1984. She is the author of numerous journal publications and has served on several pharmacy-related boards and committees. (Doc. 24-4 at pp. 5-64).

[4] According to Ginsburg's reports, red flags identified by the DEA include patterns of prescribing and dispensing combinations of frequently abused controlled substances, geographic anomalies, quantity and the strength of controlled substances, evidence of a high percentage of customers paying cash, and prescriptions written by doctors for illnesses not consistent with their area of specialty. (Doc. 24-15 at p. 155). "Pill mill" is a term used to describe a clinic or pharmacy that prescribes or dispenses controlled prescription drugs inappropriately. See *2014 National Drug Threat Assessment*, www.dea.gov.

In her first report, Dr. Ginsburg identified prescription trends, an excessive dosage and quantity of Schedule II and Schedule III controlled substances dispensed, and many instances where a combination of opioids, benzodiazepines, and muscle relaxants or stimulants were dispensed on the same prescription. (Doc. 24-15 at p. 137-138.) Dr. Ginsburg also identified a significant number of prescriptions that were paid for with multiple payment methods or by cash only. Dr. Ginsburg further concluded that many customers traveled a significant distance to Plaintiff's location. Dr. Ginsburg concluded that these findings are suggestive of a pill mill operation. Id.

The Court finds that the records reviewed by Dr. Ginsburg support her conclusions and the Defendants' basis for issuing the ISO. The prescription records reveal a disturbing pattern of prescriptions being issued by just a few doctors, and that the physicians prescribed drugs such as opioids, benzodiazepines, and muscle relaxants or stimulants often in the same prescription.[5] The highest possible strength and quantities of these medications were frequently dispensed by Plaintiff in quantities as high as 120 pills. Some prescriptions were filled for 150 to 180 pills. The records also reflect that several customers traveled from Mississippi on a monthly basis, despite the presence of several other pharmacies located closer to the customers' homes, and some customers traveled from as far away as Texas and Oklahoma. The Mississippi customers each traveled at least 40 miles or more to Plaintiff's location.

---

[5] Hydrocodone (opioid), Oxycodone (opioid), Alprazolam (benzodiazepine), Diazepam (benzodiazepine), and Carisoprodol (muscle relaxant) appear frequently in the prescription records.

8

The records further reflect that several of these prescriptions were paid for with multiple payment methods, such as insurance and cash, or cash only. These transactions are identified as "other" and are located in the column titled "payment" in the prescription monitoring program data. (*See* Doc. 26-11 at pp. 1-883; Doc. 26-12 at pp. 1-128; Doc. 26-13 at pp. 1-135). Defendants' allegations of imminent danger to public health and safety are completely supported by the administrative record. The Court finds that Defendants have established, through the administrative record, a rational basis for the issuance of the ISO. Thus, Defendants' decision was not arbitrary and capricious.

### C. Whether Plaintiff's Due Process Rights Were Violated by the Issuance of the ISO.

As previously noted, 21 U.S.C. § 824(d)(1) authorizes the suspension of a registration upon a finding of imminent danger to the public health and safety. See *Norman Bridge Drug Co. v. Banner*, 529 F. 2d 822, 828 (5th Cir. 1976). Following a review of the administrative record, the Court has determined that Defendants have provided sufficient evidence to establish a rational connection between the facts found during its administrative investigation and its decision to issue the ISO. Defendants found that Plaintiff filled several prescriptions in a manner that contributes to the ongoing abuse of controlled substances; thus, a finding of an imminent danger to public health and safety justifies and supports the suspension of the registration without notice and an opportunity to be heard at the time of the suspension. Thus, Plaintiff's due process rights were not violated.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion (Doc. 2) is **DENIED**.

The Immediate Suspension Order will not be disturbed.

**IT IS FURTHER ORDERED** that the Defendants' Joint Motion for Entry of a Consolidated Briefing Schedule (Doc. 27) is **DENIED AS MOOT.**

Baton Rouge, Louisiana, this 3rd day of July, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**